UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

IN RE HARLEY DAVIDSON, INC.
SECURITIES LITIGATION           Case No. 05-C-0547-CNC

THIS DOCUMENT RELATES TO:       AMENDED CLASS ACTION
                                           COMPLAINT FOR VIOLATIONS OF
                                           ERISA, 05-C-912 (Bosman).

ORDER GRANTING THE HARLEY-DAVIDSON DEFENDANTS' MOTION TO DISMISS
(Doc. # 80), GRANTING B.C. ZIEGLER AND COMPANY'S MOTION TO DISMISS
(Doc. # 81), AND DISMISSING THE AMENDED CLASS ACTION COMPLAINT FOR
VIOLATIONS OF ERISA

        Plaintiff, Lisa Bosman, brings this purported class action against her former

employer, Harley-Davidson, Inc., and various defendants as alleged fiduciaries of nine

retirement plans sponsored by Harley-Davidson, Inc. The defendants include Harley-

Davidson, Inc., the Harley-Davidson Motor Company Retirement Plans Committee, the

Harley-Davidson Leadership and Strategy Council, Harold Scott, James Ziemer, James

Brostowitz, Gail Lione, Joanne Bischmann, Karl Eberle, Jon Flickinger, Ronald Hutchinson,

James McCaslin, W. Kenneth Sutton, Jr., Donna F. Zarcone, and Jeffrey L. Bleustein

(collectively referred to as the "Harley-Davidson defendants"), as well as B.C. Ziegler and

Company (referred to in the complaint at the Ziegler and Companies, Inc.).

        This action is brought under sections 409 and 502 of the Employee

Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1102 and 1132. It was

consolidated pursuant to Fed. R. of Civ. P. 42 with related cases filed against Harley-

Davidson and the individual defendants.[1]  Before the court are the Harley-Davidson defendants' Motion to Dismiss or in the Alternative for Summary Judgment (Doc. # 80), and B.C. Ziegler and Company's Motion to Dismiss and Joinder to the Harley-Davidson defendants' Motion (Doc. # 81).

## STANDARD OF REVIEW

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted.  The essence of a Rule 12(b)(6) motion is not that the plaintiff has pleaded insufficient facts; rather, it is that even assuming all of the facts presented are accurate, he has no legal claim.  *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 627 (7th Cir.1999).  Moreover, the factual allegations must be enough to rise above the speculative level, meaning that the contentions have to state a claim that is plausible on its face.  *See Bell Atl. Corp. v. Twombly,* 127 S. Ct. 1955, 1974 (2007).  This requires more than "labels and conclusions." *Id.* at 1065.  "In addition, a plaintiff can plead himself out of court by alleging facts that show there is no viable claim."  *See Pugh v. Tribune Co.*, 521 F.3d 686, 699 (7th Cir. 2008) (citing *McCready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006)).

"The consideration of a 12(b)(6) motion is restricted solely to the pleadings, which consist generally of the complaint, any exhibits attached thereto, and supporting briefs." *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002); Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part

---

[1] Six of the cases consolidated under No. 05-C-547 are designated the Consolidated Securities Action: 05-C-0547 (Kadagian), 05-C-0554 (Villar), 05-C-0579 (Himes), 05-C-0609 (Katz), 05-C-0629 (Ziolkowski), 05-C-0696 (Bourret).  Additional cases consolidated under 05-C-547 include derivative actions against the defendants: 05-C-1123 (Ray) and 05-C-1251 (Cruse).  (*See* Joint Case Management Order issued July 24, 2006.)

thereof for all purposes."). Any further pleadings would turn the motion into a 12(c) motion for judgment on the pleadings, or if additional evidence was relied upon or introduced, the motion would be converted into a 56(c) motion for summary judgment. *Thompson*, 300 F.3d at 753. However, "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. Such documents may be considered by a district court in ruling on the motion to dismiss." *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) (quoting *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994).

Here, the Harley-Davidson defendants style their motion as one to dismiss or in the alternative for summary judgment. While they present multiple exhibits in support of their Motion that they consider part of the pleadings, (*see* HD Defs.' Mem. in Supp. Exs. 1-24)[2], they wish to add evidence relating to Bosman's termination date and election to take distribution of her plan account. To this end, they tender a limited list of proposed findings of fact with evidentiary support pursuant to Civil Local Rule 56.2.

Bosman presents no opposition to the defendants' proposed findings of fact, which may arguably be considered part of the pleadings inasmuch as they go to Bosman's employment and involvement in the plans that are at issue. (*See* Am. ERISA Compl. ¶ 17.[3]) Regardless, as discussed in this opinion, recent controlling authority undermines the

---

[2] For whatever reason, the Harley-Davidson defendants have chopped up various documents and submitted different pages as different exhibits. For example, the pages of the "Harley-Davidson Retirement Savings Plan for Salaried Employees (As Amended and Restated Through January 1, 1997) Includes Amendments Adopted December 21, 2002" are submitted as exhibits 6, 8, 9, 11, 17. Overlapping pages of the Summary Plan Description are submitted as exhibits 10, 12, 14, 15, 16, 18. If the exhibits lined up in a coherent manner with other documents, such as the defendants briefs, this may make sense. However, this does not appear to be the case. In any event, this format unnecessarily creates hurdles to the court's ability to review the documents in context as the court is required to piece together the various submissions.

[3] Doc. # 55, Case No. 05-CV-547.

defendants' arguments as to Bosman's standing to sue, for which they present the additional evidence (as conceded by the defendants). Moreover, the decision that follows will rest on Rule 12(b)(6).

BACKGROUND

Harley-Davidson, Inc. (referred to as "Harley" or "Harley-Davidson") is a Wisconsin corporation with its principal place of business in Milwaukee, Wisconsin. It operates primarily in two business segments: motorcycles and related products, and related financial services. Harley is the parent company for the group of companies doing business as Harley-Davidson Motor Company ("HDMC"), Buell Motorcycle Company ("Buell"), and Harley-Davidson Financial Services ("HDFS"). HDMC and Buell manufacture and sell motorcycles, as well as motorcycle parts, accessories, apparel, and general merchandise. On the other hand, HDFS provides wholesale and retail financing, along with insurance programs primarily to HDMC and Buell dealers and customers. (Compl. ¶ 18.)

During the purported class period, which runs from July 1, 2004, to March 1, 2006, (Compl. ¶ 5), Harley sponsored nine separate retirement plans, which the complaint divides into two categories. The first includes five contribution retirement plans (referred to in the complaint as "Savings Plans"), which the plaintiffs contend qualify as "employee pension benefit plans" and "plans" under ERISA §§ 3(2)(A), (3), 29 U.S.C. § 1002(2)(A), (3), as well as "defined contribution plans" under ERISA § 3(34), 29 U.S.C. §§ 1002(3) and (34). Such a plan "provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account." 29 U.S.C. § 1002(34). Investments in all

- 4 -

five of the Savings Plans are commingled in the Harley-Davidson Retirement Savings Plan Master Trust. The assets of the Trust are allocated among the plans based on the participants' interests. (*Id.* ¶ 28.) Harley-Davidson common stock constitutes approximately 35% of the total invested assets of the Savings Plans. (*Id.* ¶ 84.)

Among the Harley-sponsored Savings Plans is the Harley-Davidson Retirement Savings Plan for Salaried Employees (referred to as the "Salaried Employees Savings Plan" or "401(k) Plan"). The Salaried Employees Savings Plan provides separate accounts for each participant. (*Id.* ¶ 78-79; HD Defs.' Mem. in Supp. Ex. 8 § 6.1.) They may elect to make contributions on a pretax basis, up to certain amounts but in no case more than 50% of their pay. (HD Defs.' Mem. in Supp. Ex. 9 § 4.1.) Participants are eligible for matching employer contributions based on the financial performance of HDMC. (Compl. ¶ 82; HD Defs.' Mem. in Supp. Ex. 11 § 4.8.)

During the class period, participants were offered nineteen different investment fund options and were permitted to choose as many or as few options as they deemed appropriate. (Compl. ¶ 79; HD Defs.' Mem. in Supp. Ex. 8 § 6.2; Ex. 12 at 10; Ex. 13 at 4; Ex. 15 at 10.) The Summary Plan Description ("SPD") provides that the options are intended to give participants "an opportunity to choose from a broad range of diversified investment alternatives with materially different risks and characteristics that will permit you [the participant] to achieve a portfolio with characteristics that are appropriate for you while minimizing your risk through diversification." (HD Defs.' Mem. in Supp. Ex. 14 at 15.) The options included several mutual funds as well as the Harley-Davidson Stock Fund, which is "substantially fully invested in Harley-Davidson common stock." (*Id.* Ex. 15 at 12.) The SPD warns in bold caps that "IT IS VERY IMPORTANT THAT YOU NOT PUT ALL OF YOUR RETIREMENT SAVINGS IN JUST ONE FUND - AND THIS INCLUDES

THE HARLEY DAVIDSON COMMON STOCK FUND." (*Id.* Ex. 15 at 14.) Further, Harley-Davidson matching contributions were invested in the Harley-Davidson Stock Fund and must remain there until the participant is fully vested—after three years. (Compl. ¶¶ 82-83; HD Defs.' Mem. in Supp. Ex. 8 § 6.3.) After three years (or upon reaching age 55), a participant may elect to transfer all or part of those matching funds out of the Harley-Davidson Stock Fund. (Compl. ¶ 86; HD Defs.' Mem. in Supp. Ex. 8 §§ 6.3-6.4.)

The second category includes four defined benefit retirement plans (referred to in the complaint as "Annuity Plans"), which the plaintiff contends qualify as "defined benefit plans" and "employee pension benefits plans" under ERISA §§ 3(2), 3(3), 3(35), 29 U.S.C. §§ 1002(2), (3) and (35). (Compl. ¶¶ 31-32.) Among the Annuity Plans is the the Retirement Annuity Plan for Salaried Employees (referred to as the "Salaried Employee Annuity Plan"). Investments into the Annuity Plans are commingled in a common trust arrangement known as the Harley-Davidson Master Trust (referred to as the "Annuity Trust"). To become vested in the Annuity Plan, an employee must have five years of service with the company or reach the age of 65. (HD Defs.' Mem. in Supp. Ex. 2 § 1.18.)

The Harley-Davidson Retirement Plans Committee ("the Retirement Plans Committee") was the designated administrator of the nine retirement plans throughout the purported class period. (Compl. ¶ 19.) In that sense, it was the "named fiduciary" under 29 U.S.C. § 1102(a)(1). During the class period, the members of the Retirement Plans Committee (collectively the "Retirement Plans Committee Defendants") included defendants Harold Scott, Harley's Vice President for Human Resources; James Ziemer, Harley's President and CEO; James Brostowitz, Harley's Treasurer; and Gail Lione,

Harley's Vice President, General Counsel, Chief Compliance Officer, and Secretary. (*Id.* ¶ 20.)

B.C. Ziegler and Company ("Ziegler"), through its Investment Services Group, provided advice to the Retirement Plans Committee regarding the investment of assets of the Plans during the class period. (*Id.* ¶ 24.)

Harley's Leadership and Strategy Council ("the LSC") is comprised of selected members of senior management from various areas within Harley-Davidson, and is alleged to have exercised supervisory authority over the Retirement Plans Committee during the class period. (*Id.* ¶¶ 21, 47.) The LSC makes high-level resource decisions, develops policies, and acts as an advisory group to the CEO. (*Id.* ¶ 21.) During the class period, the members of the LSC included defendants Joanne Bischmann, Harley's Vice President of Marketing; Karl Eberle, Harley's Vice President and General Manager; Jon Flickinger, a Harley Vice President and CEO of Buell; Ronald Hutchinson, a Harley Vice President; James McCaslin, Harley's President and COO; W. Kenneth Sutton, Jr., a Harley Vice President; Donna F. Zarcone, Harley's President and Chief Operating Officer of Financial Services; as well as Ziemer, Brostowitz and Lione. (*Id.* ¶ 22) The LSC defendants reported to defendant Jeffrey Bleustein, who was Harley's CEO until his retirement on April 30, 2005. After that date, the LSC defendants reported to Ziemer. (*Id.* ¶ 23.)

Plaintiff Bosman began working for Harley as a manufacturing engineer on June 2, 2002. (*Id.* ¶ 16; Thone Decl. ¶ 3.) On July 3, 2003, she became a participant in the Harley-Davidson Retirement Savings Plan for Salaried Employees, (Compl. ¶ 17; Thone Decl. ¶ 4), and on July 1, 2004, she became a participant in the Harley-Davidson Retirement Annuity Plan for Salaried Employees, (Compl. ¶ 17; Thone Decl. ¶ 5). During

the course of her employment, Bosman contributed $3472.51 to the Harley-Davidson Retirement Savings Plan for Salaried Employees. (Thone Decl. ¶ 6.) In turn, Harley-Davidson contributed $842.92. (*Id.* ¶ 7.)

On June 15, 2005, Bosman terminated her employment with Harley-Davidson. (*Id.* ¶ 8.) She elected to take a distribution of 100% of her interest in the Salaried Employees Savings Plan in the amount of $3934.63 on December 27, 2005. At the time of her withdrawal, Bosman had 100% of her contributions invested in the Harley-Davidson Stock Fund. (*Id.* ¶ 9.) Because the Annuity Plan requires at least "Five (5) Years of Vesting Service" before acquiring a vested interest, Bosman had not obtained a vested interest in the Harley-Davidson Retirement Annuity Plan when she terminated her employment with Harley-Davidson after two years and thirteen days. (*Id.* ¶ 10; HD Defs.' Mem. in Supp. Ex. 2 §1.18.)

Bosman brings this purported class action on behalf of all the Harley-sponsored plans, herself, and all other similarly situated individuals who were participants or beneficiaries of any of the nine plans between July 1, 2004, and March 1, 2006. (Compl. ¶¶ 1, 13, 66-67.) She does not contend that she participated in any of the Harley-sponsored plans aside from the Salaried Employees Savings Plan and Salaried Employees Annuity Plan. (*See id.* ¶ 17.)

The factual assertions underlying this ERISA action are nearly identical to those that birthed the related consolidated securities action against Harley and its officers, which is also pending in this court. The complaint cites portions of press releases issued during the class period touting Harley's record revenues and earnings, as well as corresponding earnings conference calls. The public statements include projected earnings and shipment goals. (*Id.* ¶¶ 89-102.) In reality, according to the complaint,

Harley was losing market share due to declining demand and increased competition. (*Id.* ¶¶ 102-04.) This was evidenced by the growing gap between motorcycle shipments to dealers and actual retail sales. (*Id.* ¶ 105.) Further, HDFS reduced its credit standards in an attempt to boost sales. This in turn resulted in increased credit losses. (*Id.* ¶¶ 106-07.)

On April 13, 2005, Harley issued a press release announcing that it "slashed" expected earnings and was cutting motorcycle shipments. (*Id.* ¶ 114.) Specifically, it adjusted its previous forecast of "mid-teens" earnings growth to around "5-8 percent" for 2005. Further, its shipment target for 2005 was reduced from 339,000 motorcycles to 329,000, which was up from the 317,000 shipped in 2004. (*Id.* ¶ 115.) Following release of this information, Harley-Davidson stock slid from $58.77 per share on April 12, 2005 to $45.42 over the next several trading days. (*Id.* ¶ 10, 118.)

According to Bosman, Harley's forecasts and statements issued prior to the April 13, 2005, announcement were false and misleading because the defendants knew or recklessly disregarded the "true fact" that demand for Harley products was declining. (*Id.* ¶ 119.) Bosman's primary contention is that the defendants breached their fiduciary duties to the plans and the plan participants (and beneficiaries) because they "caused or permitted the plans and their participants to acquire and hold shares of Harley-Davidson common stock" when such stock was an imprudent investment. (*Id.* ¶¶ 4-6.) Moreover, Bosman asserts: "Harley-Davidson stock was imprudent for the Plans to purchase or hold for retirement savings because . . . the stock was trading at artificially high prices due to the Company's public statements as to motorcycle shipments and earnings growth, because the Company's statements were false and later restated." (*Id.* ¶¶ 4-5, 119-21.)

Due to the defendants' actions, the plans suffered "at least tens of millions of dollars in losses because substantial assets of the Plans were imprudently allowed to

be put at great risk." (*Id.* ¶ 122.) In Bosman's view, such losses would not have occurred "[h]ad the Defendants discharged their fiduciary duties . . . including the provision of full and accurate disclosure of material facts concerning investment in Harley-Davidson stock and divesting the Plan from Company Stock offered by the Plan once maintaining such an investment became imprudent." (*Id.* ¶¶ 125-26.)

Bosman raises six overlapping counts of breach of fiduciary duty under ERISA §§ 404 and 405 in her complaint. Count I claims a breach of the fiduciary duty of care under ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B) against all defendants. Here, she claims the defendants "failed to act prudently and failed to use reasonable care, skill, or diligence in offering Harley-Davidson Stock as an investment option, purchasing Harley-Davidson Stock for the Plan, making matching contributions of Harley-Davidson Stock, monitoring the Plan participants to diversify out of Company Stock, and communicating information concerning Harley-Davidson's financial performance to Plan participants and beneficiaries." (*Id.* ¶¶ 133, 134-47.)

Count II alleges a breach of the fiduciary duty to provide complete and accurate information under ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A) by all defendants. Here, Bosman contends that the defendants failed to inform participants and beneficiaries properly "regarding Harley-Davidson Stock, Harley-Davidson's true financial earnings growth, the widening gap between Harley-Davidson's motorcycle shipments and actual sales by dealers, the reduction in credit standards by HDFS, and the consequent artificial inflation of the value of Harley-Davidson Stock." (*Id.* ¶ 152.) Allegedly, the defendants also failed to "convey accurate information regarding the soundness of Harley-Davidson Stock and the prudence of saving for retirement with Harley-Davidson Stock. " (*Id.* ¶¶ 153, 154-60.)

Count III charges a breach of duty of loyalty under ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A) against all defendants related to individual defendants' personal stock holdings. The claim asserts that the defendants faced a conflict of interest, which they did not resolve, and endorsed unreasonable growth estimates for Harley-Davidson. (*Id.* ¶¶ 174-75.)

Count IV alleges a breach of the fiduciary duty to monitor and investigate under ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A)-(B) by Harley-Davidson and individual defendants Bleustein, Ziemer, and "the Council Defendants." Here, the defendants are said to have "failed to ensure that monitored fiduciaries had access to knowledge about the Company's true financial performance and growth prospects . . . [and] appreciated the huge risk inherent in saving for retirement with Harley-Davidson Stock." (*Id.* ¶¶ 185-86.) This court further charges that the defendants failed to take action to prevent the monitored fiduciaries from "imprudently allowing the Plans to continue offering the Harley-Davidson Stock as a retirement savings option, and to continue acquiring and holding Harley-Davidson Stock when it no longer was prudent to do so." (*Id.* ¶ 186.)

Count V asserts co-fiduciary liability under ERISA § 405(a), 29 U.S.C. § 1105(a) on the part of all defendants for knowingly participating in and knowingly under[taking] to conceal" breaches of other fiduciary duties. (*Id.* ¶ 193.) And, finally, Count VI alleges "knowing participation in a breach of fiduciary duty" against defendant Harley-Davidson, Inc.

For relief, Bosman seeks an order compelling the defendants to restore all losses and profits to the plans resulting from the defendants' imprudent decisions regarding plan assets, a constructive trust on any amounts the defendants were unjustly enriched, actual damages, costs, attorneys fees and other equitable relief.

DISCUSSION

The Harley-Davidson defendants move to dismiss the complaint, or in the alternative, for summary judgment, asserting that (1) Bosman lacks standing to sue because she is a *former* participant in the plans, and (2) that the complaint fails to state a valid claim for breach of fiduciary duty under ERISA. As to the former, the parties agree that Bosman was a participant in the plans when her complaint was filed, and it is undisputed that Bosman had terminated her employment and had cashed out her plan benefits at the time she filed the amended complaint.

I. Standing

Pursuant to section 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2), "[a] civil action may be brought by . . . by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title." In turn, section 1109 specifies liability for breach of fiduciary duties and remedies for such breach.

Under 29 U.S.C. § 1002(7), a "participant" is defined as "any employee or former employee . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer . . . ." In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 118 (1989), the U.S. Supreme Court further interpreted "participant" to include either "employees in, or reasonably expected to be in, currently covered employment," or "former employees who have a reasonable expectation of returning to covered employment or who have a colorable claim to vested benefits."

After the parties completed briefing on this matter, the Seventh Circuit issued its decision in *Harzewski v. Guidant Corp.*, 489 F.3d 799 (7th Cir. 2007), in which it reversed a district court's conclusion (which the defendants had relied on for support) that the purported class plaintiffs lacked standing to bring the ERISA action. Similar to

Bosman, the named *Harzewski* plaintiffs cashed out their 401(k) plans prior to filing their amended complaint. 489 F.3d at 803. The district court agreed with the defendants that the plaintiffs lost standing at that point because they no longer had a colorable claim to "vested benefits." The court of appeals rejected that conclusion, noting that regardless of when or whether a plaintiff cashes out her benefits, a money judgment against her employer in the ERISA action could constitute the receipt of a plan benefit under 29 U.S.C. § 1002(7). It distinguished this remedy from suits seeking "damages"; any monetary relief must constitute "benefits" to which the participant is entitled. Hence, "the plaintiffs must show that they are claiming an amount of money to which they are entitled by plan documents over what they received when they retired and received the money in their retirement accounts." *Id.* at 804. It observed that a former employee is entitled to prudent management of the retirement account. *Id.* at 805; *see also Evans v. Akers*, 534 F.3d 65, 70 -71 (1st Cir. 2008) ("Under ERISA, a participant is also promised that the funds in her individual account will be managed prudently by the plan fiduciary.").

The parties have been diligent in notifying the court of relevant supplemental authority, and the defendants acknowledge that *Harzewski v. Guidant Corp*., 489 F.3d 799 holds that "former participants in 401(k) plans have statutory standing to sue." Therefore, in light of *Harzewski*, Bosman's claims against the defendants for breach of fiduciary duties with respect to the Savings Plans will not be dismissed for lack of standing. *See also Rogers v. Baxter Int'l, Inc*., 521 F.3d 702 (7th Cir. 2008).

Interestingly, the defendants have also asserted that Bosman "does not have any vested interest in the Annuity Plan because she only had two years, 13 days of employment, well short of the Annuity Plan's five year vesting period." (HD Defs.' Mem. in Supp. 11.) And, the plan documents attached to the defendants' motion specify that the

"vesting date" in the Salaried Employee Annuity Plan is the "first date on which an employee shall have completed at least five (5) Years of Vesting Service." (*Id.* Ex. 2 § 1.18.) Bosman states that she "participated" in the Annuity Plans, (see Compl. ¶ 17), but she does not challenge the defendants' contention directly. However, because she makes little distinction between the plans with regard to the defendants' alleged breaches of fiduciary duties, and there are sufficient grounds to dismiss Bosman's complaint on the merits, further discussion on this point is unnecessary.

## II. Failure to State a Claim

In general, "[t]o state a claim for breach of fiduciary duty under ERISA, the plaintiff must establish: (1) that the defendants are plan fiduciaries; (2) that the defendants breached their fiduciary duties; and (3) that the breach caused harm to the plaintiff." *Brosted v. Unum Life Ins. Co. of Am.*, 421 F.3d 459, 465 (7th Cir. 2005) (citing *Kamler v. H/N Telecomm. Serv., Inc.*, 305 F.3d 672, 681 (7th Cir. 2002)). The defendants' motion focuses on Bosman's contentions that the defendants breached their fiduciary duties. Though the facts underlying this action are identical in many respects to those underlying the related consolidated securities action, allegations of breach of fiduciary duties and ERISA violations are generally subject to the more lenient pleading standards under Federal Rule of Civil Procedure 8. *See Pugh*, 521 F.3d at 699; *Howell v. Motorola, Inc.*, 337 F. Supp. 2d 1079, 1088-89 (N.D. Ill. 2004) (discussing pleading standard in ERISA action and citing cases). Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief."

As discussed, Bosman's complaint is premised on charges that the defendants breached their fiduciary duties by continuing to offer and maintain Harley common stock in the plans at a time when it was imprudent to do so, in violation of ERISA

§§ 404 and 405. "Section 404 of ERISA imposes a 'prudent man' standard of care on plan fiduciaries." *Pugh*, 521 F.3d at 699. "They discharge their obligations to plan participants by acting 'with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Id.* (quoting 29 U.S.C. § 1104(a)(1)(B)). Bosman claims the defendants could have satisfied their duty and avoided "predictable losses" had they taken certain actions, including "not offering Company Stock as a retirement option" and "divesting the Plans of Company Stock." (Compl. ¶ 141.)

The defendants first argue that they cannot be liable for any breach of duty relating to imprudent investment for failing to diversify inasmuch as the Savings Plans are "eligible individual account plans" ("EIAPs") under 29 U.S.C. § 1107(d)(3).[4] As EIAPs under 29 U.S.C. § 1107(d)(3), the Savings Plans' fiduciaries are exempt from ERISA's duty to diversify as well as the percentage limitations on investments in employer securities. *See* 29 U.S.C. § 1104(a)(2) ("In the case of an eligible individual account plan . . . the diversification requirement . . . and the prudence requirement (only to the extent that it requires diversification) . . . is not violated by acquisition or holding of . . . qualifying employer securities."); *Id.* § 1107(b)(1); *Pugh*, 521 F.3d at 699; *Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1097 (9th Cir. 2004)). These exemptions were put in place given that the very nature of EIAPs "run[s] afoul of ERISA." *Wright*, 360 F.3d at 1094. In the case at bar, the plan provides a Harley-Davidson common stock fund that is "substantially fully invested in Harley-Davidson common stock," all matching contributions initially remain

---

[4] Under 29 U.S.C. § 1107(d)(3), an EIAP "means an individual account plan which is (i) a profit-sharing, stock bonus, thrift, or savings plan; (ii) an employee stock ownership plan; or (iii) a money purchase plan . . . ." There is no dispute that the Savings Plans are EIAPs. (*See* Pl.'s Mem. in Supp. 6.)

in the Harley-Davidson stock fund, and participants may invest in the various options as they see fit. (HD Defs.' Mem. in Supp. Ex. 8, § 6.3, Ex. 15 at 12; Compl. ¶ 83 - "Consequently, due to the Company's matching contributions, each and every Savings Plan participant held Harley-Davidson Stock in his or her Savings Plan account during the Class Period.")

However, as a general matter, "ERISA's prudence requirement continues to apply to an EIAP's fiduciaries." *Wright*, 360 F.3d at 1097; *see generally Armstrong v. LaSalle Bank National Ass'n,* 446 F.3d 728, 732 (7th Cir. 2006) (noting that "absence of any general such duty [to diversify] from the ESOP setting does not eliminate the trustee's duty of prudence"); *Summers v. State Street Bank & Trust Co.,* 453 F.3d 404 (7th Cir. 2006); *Steinman v. Hicks*, 352 F.3d 1101, 1106 (7th Cir. 2003). Under these circumstances, courts have applied a deferential standard in favor of fiduciaries investing in company securities. *See e.g., Edgar v. Avaya*, 503 F.3d 340 (3rd Cir. 2007); *Wright*, 360 F.3d at 1097; *Moench v. Robertson*, 62 F.3d 553 (3d Cir.1995); *Kuper v. Iovenko*, 66 F.3d 1447, 1457 (6th Cir. 1995). *But see Smith v. Delta Air Lines, Inc*., 422 F. Supp. 2d 1310, 1331 (N.D. Ga. 2006) ("*Moench*'s holding defies § 1104(a)(2), mandating diversification in certain circumstances even though ERISA plainly excuses it."). The Ninth Circuit, relying on *Moench v. Robertson*, 62 F.3d 553 (3d Cir. 1995), described the standard:

> Under this standard, an EIAP fiduciary who invests in employer stock is presumed to have acted consistently with ERISA; however, a plaintiff may overcome this presumption by showing that the fiduciary abused his or her discretion. To rebut the presumption, "the plaintiff must show that the ERISA fiduciary could not have believed reasonably that continued adherence to the [plan's terms] was in keeping with the settlor's expectations of how a prudent trustee would operate."

*Wright*, 360 F.3d at 1098 (quoting *Moench*, 62 F.3d at 571). In other words, "the plaintiff must show that the ERISA fiduciary could not have reasonably believed the plan's drafters would have intended under the circumstances that he continue to comply with the ESOP's direction that he invest exclusively in employer securities." *Kuper*, 66 F.3d at 1459.[5]

It is true, as Bosman points out, that EIAPs such as the Savings Plans, differ from employee stock ownership plans ("ESOPs"), and that courts applying a deferential standard have focused on the characteristics of ESOPs. *See e.g., Moench*, 62 F.3d at 571-72; *Kuper,* 66 F.3d at 1458. An ESOP is defined in relevant part as an individual account plan "designed to invest primarily in qualifying employer securities." 29 U.S.C. § 1107(d)(6); *see Summers*, 453 F.3d at 410 ("The goal of an ESOP is to give employees . . . a larger stake in the company's fortunes.") (citing *United States v. McCord*, 33 F.3d 1434, 1440 n.6 (5th Cir. 1994)); *Martin v. Feilen*, 965 F.2d 660, 664 (8th Cir.1992) ("Congress expressly intended that the ESOP would be both an employee retirement benefit plan and a 'technique of corporate finance' that would encourage employee ownership."). And it is true that the Savings Plans here are intended to "encourage savings and to provide benefits to salaried employees of Harley-Davidson upon their retirement or earlier termination . . . ." (HD Defs.' Mem. in Supp. Ex. 8 § 1.1.) However, the distinction for present purposes does not change matters. Indeed, if the deferential standard exists to hold fiduciaries to a standard of prudence in light of the unique risks to participants, *see Summers*, 453 F.3d at 407; *Kuper,* 66 F.3d at 1457, despite tension with the specific

---

[5] The court rejects Bosman's contention that application of a discretionary standard is somehow inappropriate at the motion to dismiss stage. Indeed, court decisions in *Pugh*, 521 F.3d 686, and *Edgar* , 503 F.3d 340, stand in direct opposition to the Bosman's position. *See e.g. Edgar*, 503 F.3d at 349 ("Quite simply, if a plaintiff does not plead all of the essential elements of his or her legal claim, a district court is required to dismiss the complaint pursuant to Rule 12(b)(6)."); *In re RadioShack Corp. ERISA Litig.*, 547 F. Supp. 2d 606 (N.D. Tex. 2008) (looking to *Edgar* and *Wright* and granting motion to dismiss breach of fiduciary duty claims under Rule 12(b)(6)); *see also Twombly*, 127 S. Ct. 1955.

exemption provided to ESOP EIAPs, the standard appears as applicable to the Savings Plans inasmuch as the plans permit participants to diversify their individual investments while the plans maintain the dedicated employer common stock fund option.[6]

In *Edgar v. Avaya*, 503 F.3d 340, a case strikingly similar to this one, the U.S. Court of Appeals for the Third Circuit rejected the argument presented by Bosman, and applied a deferential standard to the plaintiff's breach of fiduciary duty claims. In that case, the plaintiff, on behalf of a purported class, contended that defendants Avaya Inc. and its officers breached their fiduciary duties under ERISA § 404 by imprudently offering Avaya common stock as an investment option and failing to disclose material information to plan participants. 503 F.3d at 342. As in this case, the plans at issue in *Edgar* were EIAPs, 29 U.S.C. § 1107(d)(3), that included as an investment option a stock fund primarily invested in Avaya common stock. *Id.* at 343-44. Also like here, the charges in *Edgar* arose from the defendants' alleged false and misleading statements that caused Avaya stock to trade at artificially high prices; stock prices fell 25% after Avaya announced that it was adjusting its performance goals. *Id.* at 348. Following a thorough discussion of *Moench v. Robertson*, 62 F.3d 553, and related cases, the court concluded that "the underlying rationale of *Moench* applies here [to the EIAP and] *Moench's* abuse of discretion standard governs judicial review of defendants' decision to offer the Avaya Stock Fund as an investment option." *Id.* at 347-48.[7] Further, in *Pugh*, the Seventh Circuit acknowledged the application of a deferential standard in such cases:

---

[6] Some courts have referred to similar plans with multiple options for investment as having an "ESOP component"—in this case, the Harley-Davidson Stock Option. *See e.g., Smith v. Delta Air Lines, Inc.*, 422 F. Supp. 2d 1310, 1330 (N.D. Ga. 2006).

[7] In reaching this conclusion, the court specifically rejected the argument that its decision in *In re Schering-Plough Corp. ERISA Litigation*, 420 F.3d 231 (3d Cir.2005), relied on by Bosman in this case, required a different result. *See Edgar*, 503 F.3d at 347 n.12.

> Here, we must be mindful of the delicate balance an ESOP fiduciary must achieve: he risks being sued for violating the plan if he diversifies but may impose unwanted risk on the participants if he doesn't. *Summers*, 453 F.3d at 410. *As a result, "the plaintiff must show that the ERISA fiduciary could not have reasonably believed that the plan's drafters would have intended under the circumstances that he continue to comply with the ESOP's direction that he invest exclusively in employer securities." Id.* (quoting *Kuper v. Iovenko*, 66 F.3d 1447, 1459 (6th Cir.1995)); *see also Moench v. Robertson*, 62 F.3d 553, 571-72 (3rd Cir.1995).

521 F.3d at 701 (emphasis added)[8]; *see also In re RadioShack Corp. ERISA Litig.*, 547 F. Supp. 2d 606 (discussing facts very similar to this case, reviewing *Moench*, *Kuper*, *Edgar,* and *Wright*, then applying deferential standard to plaintiffs' breach of fiduciary duty claims).

With this backdrop, the defendants submit that Bosman has not put forth facts demonstrating that the defendants' abused their discretion as fiduciaries in continuing to offer Harley stock as an investment. At the core, Bosman asserts that Harley was shipping to dealers more motorcycles than were being sold, and that HDFS lowered credit standards to boost sales. (Compl. ¶¶ 105-09.) In repetitive and conclusory fashion, the complaint asserts that these practices were intended to deceive the market and to cause Harley stock to trade at inflated prices. All of this led to the April 13, 2005, announcement that Harley was adjusting its shipment and earnings projections, which caused a 23% drop

---

[8] Though the *Pugh* court quotes from *Summers* and *Kuper* in discussing an ESOP, the plan at issue in *Pugh* was similar to the Savings Plans in this case. Participants had a choice of investing their money in one or more of ten different funds. *See Hill v. The Tribune Co.*, 2006 WL 2861016, *13 (N.D. Ill. 2006) ("Both Plans [at issue] are defined contribution plans that provide individual accounts for participants. . . . Nine of the funds are third-party, publicly-traded mutual funds. The other fund for each Plan is a fund that is required to invest almost entirely in Tribune common stock, the Company Stock Fund."), *aff'd sub nom, Pugh*, 521 F.3d 686.

in the value of Harley stock over the next several days of trading. And, with the benefit of hindsight, Bosman contends the fiduciaries should have abandoned the structure of the Plan and barred participants from investing in the Harley Stock Fund at some earlier point.

Stating a valid claim of imprudence under these circumstances requires more than allegations that there were gaps between supply and demand and a corresponding bad quarter. "Mere stock fluctuations, even those that trend downward significantly, are insufficient to establish the requisite imprudence to rebut the *Moench* presumption." *Wright*, F.3d at 1099. Similar to the situation in *Edgar*, such developments and the corresponding drop in stock price do not create the type of dire situation which would require defendants to disobey the terms of the plans by not offering the Harley-Davidson Stock Fund as an investment option, or by divesting the Plans of Harley securities. *See Edgar*, 503 F.3d at 348. Bosman's assertions are even more dubious given that the April 2005 stock price drop was in no way indicative of a chronic, deteriorating financial condition. (*See* HD Defs.' Mem. in Supp. Ex. 1.) Harley had achieved record revenue and income for eighteen years before the class period, (Compl. ¶ 95), it achieved record revenue and earnings for the years included in the class period, (*see id.* ¶ 102; HD Defs.' Mem. in Supp. Exs. 19, 22), and, following the April 2005 drop, Harley stock prices generally increased throughout the remainder of the class period, (HD Defs.' Mem. in Supp. Exs. 1, 24). *See Pugh*, 521 F.3d at 701 ("Comparing publicly available stock prices to the allegations in the complaint allows us to conduct a hindsight analysis of whether it was in fact imprudent to continue to invest in Tribune stock."); *Edgar*, 503 F.3d at 349 n.13 ("[B]are allegations of fraud and other wrongdoing set forth in Edgar's amended complaint are insufficient to establish an abuse of discretion . . . ."); *In re RadioShack Corp. ERISA Litig.*, 547 F. Supp. 2d 606; *see also Delta Air Lines, Inc.*, 422 F. Supp. 2d at 1331 ("[M]ere

decline in stock value, absent knowledge of impending collapse or some other impropriety, is insufficient under *Moench* and cases interpreting it.").[9]   Hence, Bosman fails to adequately allege that the defendants acted imprudently by not discontinuing investment in the Harley-Davidson stock fund and divesting the plans of Harley stock.

Further, Bosman's related claims that the defendants failed to provide complete and accurate information are without merit.  These allegations, again in repetitive and overlapping manner, focus on the defendants' failure to disclose "material information" with regard to Harley's "true earnings growth," gaps between shipments and sales, and reduction in credit standards by HDFS.  While it may be assumed that a fiduciary "may not materially mislead those to whom section 1104(a)'s duties of loyalty and prudence are owed," *see Edgar*, 503 F.3d at 350 (citing cases), Bosman does not contend that the defendants intentionally misled participants with regard to investment.  Indeed, these claims appear to rely entirely on information presented to the market in press releases, SEC filings, and conference calls, which, via cross-reference in plan documents to Harley's SEC filings, were made by "the defendants" in a "fiduciary capacity," according to Bosman. (*See* Compl. ¶¶ 111-13.)  However, such charges have been found insufficient to give rise to fiduciary liability.  *See Stein v. Smith*, 270 F. Supp. 2d 157, 172-73 (D. Mass. 2003) ("Many of the statements alleged to have been lacking were made not by Smith, but by S&W—e.g., press releases and periodic filings with the Securities and Exchange Commission.  With respect to these statements, no fiduciary liability can be implicated: these were statements made to the market in general, not to Plan participants

---

[9] Bosman's reliance on hindsight is put front and center as, without citation to any authority, she argues in her opposition brief that the defendants' imprudent administration is evidenced by the fact that Harley-Davidson stock "underperformed the market by as much as 45 percent" during the purported class period.  (Pl.'s Mem. in Opp. 2, 23 n. 16.)  Such a comparison is meaningless for myriad reasons, which is probably why plaintiff is unable to direct the court to any supporting authority.

specifically."); *see generally Baker v. Kingsley,* 387 F.3d 649, 662 (7th Cir. 2004) ("[V]ague allegations of 'assessments' of the general economic well-being of an employer, especially in the absence of specific allegations of intent to deceive, are not sufficient to state a claim for breach of fiduciary duty under ERISA.").

The SPD informed participants of the risks involved in investment, and that "there is no guarantee that any fund will achieve its objective, and a fund may lose money." (HD Defs.' Mem. in Supp. Ex. 15 at 10-14.) It also encouraged diversification, specifically warning participants not to put all their savings in just one fund, including the Harley-Davidson Stock Fund. (*Id.* Ex. 15 at 14.) *See DiFelice v. U.S. Airways, Inc.*, 436 F. Supp. 2d 756, 788 (E.D. Va. 2006) ("Thus, if, as in this case, a 401(k) plan offers participants a broad array of investment choices, one of which is a relatively risky option to invest in employer securities, the fiduciary should not be deemed to have violated any fiduciary duty for offering this option provided the investment in company stock remains viable, and the company has fully disclosed to participants the risks attendant in that investment."), *aff'd,* 497 F.3d 410 (4th Cir. 2007). In any event, the complaint fails to coherently state how the defendants were to know the "true facts" alleged above, (*see e.g.,* Compl. ¶¶ 55, 56, 57, 58, 101, 103, 108, 109, 120-21, 133-47, 152-53, 155, 164, 174, 186, 193), or know that "the price of Company Stock would trade at a discount once the market became aware that the Company had overstated both earnings growth and anticipated motorcycle shipments." (*Id.* ¶ 137); *see Delta Air Lines*, 422 F. Supp. 2d at 1331-32 ("Although the Court is to view the facts in the light most favorable to Plaintiff and accept all well-pleaded averments as true, Plaintiff does not have license to assert unsupported conclusions to avoid dismissal. . . . Therefore, the Court need not accept as true Plaintiff's reference to nondisclosure of unspecified 'negative material information,' 'public misrepresentations,' and 'inaccurate'

and 'incomplete' SEC filings . . . ."). To the extent that the defendants "knew or recklessly disregarded, the true facts" due to their "positions as directors, senior officers, or [committee] members," (Compl. ¶ 119), "conclusory statement[s] that all defendants should have known specific facts about a company is generally insufficient to state a claim." *Pugh*, 521 F.3d at 701; *see also Howell*, 337 F. Supp. 2d at 1089-91.

Under the circumstances, the complaint fails to state a claim that the defendants breached their fiduciary duties under 29 U.S.C. § 1104(a) by not managing the Plans in the best interests of the participants as discussed above. Consequently, related and derivative allegations of breach of a duty of loyalty, duty to monitor and investigate, co-fiduciary liability, and knowing breach of fiduciary duty (Counts II through VI) fail as a matter of law.[10] *See e.g., In re RadioShack Corp. ERISA Litig.*, 547 F. Supp. 2d at 616 ("Plaintiffs' claims for failure to monitor other fiduciaries, co-fiduciary liability, and conflict of interest are derivative of their other claims. Thus, because the fiduciary-duty and misrepresentation claims are subject to dismissal, these claims are as well."); *Delta Air Lines*, 422 F. Supp. 2d at 1333-34 (same); *Edgar v. Avaya, Inc.*, No. 05-3598, 2006 WL 1084087, *11 (D.N.J. April 25, 2006) (noting that upon finding that defendants did not breach fiduciary duty under ERISA by failing to manage the Plans in the best interests of the participants, related claims of breach of duty of loyalty, breach of duty to monitor, and breach of co-fiduciary duty all fail), *aff'd*, 503 F.3d 340.

---

[10] The parties apparently tie the success or failure of the complaint at this stage on Bosman's prudence claim. The Harley-Davidson defendants assert that Counts II through VI do not provide independent grounds for relief, but rather depend on the establishment of an underlying breach of fiduciary duty. Because the prudence claim fails, the remaining counts must also fail as a matter of law, according to the defendants. (HD Defs.' Mem. in Supp. 20.) The defendants then summarily go through the remaining counts and provide case law in support of their position. In response, Bosman apparently agrees, arguing only that "[s]ince the Court should sustain Count I, Counts II through VI should be sustained as well." (Pl.'s Mem. in Opp. 25.)

Further, as the causes of action set forth in the complaint do not distinguish between the Harley-Davidson defendants and Ziegler—in fact, only three paragraphs mention Ziegler by name, (Compl. ¶ 24, 53-54); the rest lump Ziegler into the mix of "defendants"—Ziegler's motion to dismiss may be granted for the reasons set forth above. Therefore,

IT IS ORDERED that the Harley-Davidson defendants' Motion to Dismiss or in the Alternative for Summary Judgment (Doc. # 80) is granted.

IT IS FURTHER ORDERED that the B.C. Ziegler and Company's Motion to Dismiss (Doc. # 81) is granted.

IT IS FURTHER ORDERED that the Amended Class Action Complaint for Violations of ERISA is dismissed.

IT IS FURTHER ORDERED that Case No. 05-CV-912 (Bosman) is dismissed.

Dated at Milwaukee, Wisconsin, this 8th day of October, 2009.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
CHIEF U. S. DISTRICT JUDGE